UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE J. KING, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | )   Case number 4:13cv1985 TCM |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM AND ORDER

This action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security (Commissioner), denying the application of Johnnie King (Plaintiff) for disability insurance benefits ( DIB ) under Title II of the Social Security Act (the Act ), 42 U.S.C. § 401-433, is before the undersigned by the written consent of the parties. See 28 U.S.C. § 636(c).

### Procedural History

In February 2011, Plaintiff applied for DIB,[1] alleging that he became disabled on April 2, 2009, because of swelling of the pancreas, severe constipation, high blood pressure, and tinnitus. (R.[2] at 111-17, 138.) Plaintiff subsequently amended his alleged onset date of disability to be January 15, 2004. (Id. at 24.) His application was denied initially and following a March 2012 hearing before Administrative Law Judge (ALJ) Amy Klingemann.

---

[1] A 1992 application for Supplemental Security Income was denied following an administrative hearing and not pursued further.

[2] References to "R." are to the administrative record filed by the Commissioner with her answer.

(Id. at 14-16, 20-29, 58, 62-67.) The Appeals Council denied his request for review, effectively adopting the decision as the final decision of the Commissioner. (Id. at 4-6.)

## Testimony Before the ALJ

Plaintiff, represented by counsel, testified at the hearing.[3]

At the time of the hearing, Plaintiff was fifty-five years of age. He is 5 feet, 2 inches tall and weighs 105 pounds. He weighed approximately 110 pounds in September 2008. He lives with his wife. Plaintiff attended school through the fifth grade; never attempted to obtain his General Equivalency Degree (GED); and never received any vocational training. (Id. at 26-28, 34.)

Plaintiff testified that he began receiving treatment for pancreatitis in 2008, was hospitalized for the condition in April 2008, and was hospitalized again for the condition in September 2010. (Id. at 24-25, 32-33.) His medications in 2008 included Tramadol. (Id. at 33-34.)

Plaintiff testified that he currently experiences daily pain in his back and abdomen that causes difficulty with standing and walking. His doctors have advised him that he will have to live with the pain for the rest of his life. (Id. at 30.) Also, Plaintiff has always had problems with his memory and forgets a lot of things. (Id. at 34-35.)

Asked about his exertional abilities, Plaintiff responded that he can currently lift approximately five pounds, walk approximately four blocks, and must lean on something

---

[3] Dale Thomas briefly testified as a vocational expert. His testimony is not relevant to the ALJ's decision.

when he stands. He becomes uncomfortable when he sits because his back pain prevents him from leaning back. He changes positions from sitting to standing to lying down throughout the day. (Id. at 30-31, 35.)

As to his daily activities, Plaintiff reported that he engages in the same type of activity as he did in 2008 – he gets up and watches television. He lies down most of the day. He does not do any household chores or yard work, but he does do some of the shopping. He does not have a lot of hobbies; he used to like to go fishing. (Id. at 34-36.)

**Medical Records Before the ALJ**

The earliest medical record before the ALJ are the results of a January 2009 blood test revealing that Plaintiff had low levels of hemoglobin, hematocrit, and mean corpuscular hemoglobin (MCH) and high levels of cholesterol, protein, globulin, red cell distribution width (RDW), and aspartate aminotransferase (AST). (Id. at 174-76.) Similar results were revealed by a blood test the next month. (Id. at 177.)

Plaintiff was admitted to Barnes-Jewish Hospital (BJH) on April 3, 2009, with complaints of an abrupt onset of abdominal pain beginning March 29, 2009. Plaintiff reported that the pain radiated to his back. He also reported he had had a similar pain about eleven years prior and was then told by his doctor to avoid certain foods. Plaintiff's history of hypertension was noted. He had no history of gall stones or pancreatitis. It was noted that Plaintiff drank four to five beers on a nightly basis. Physical examination showed mild epigastric tenderness. An abdominal ultrasound showed mild pancreatic ductal dilation and minimal perihepatic ascites. Plaintiff was admitted with a diagnosis of mild acute

pancreatitis, likely secondary to alcohol use. Plaintiff complained of constipation during his admission, and it was noted that such condition was worsened by iron supplementation and opiate pain medication. Plaintiff was restarted on medication for hypertension. He was discharged on April 8 with prescriptions for Lisinopril, Senna, Colace, Fleet's enema, multi-vitamins, Ranitidine, and Ferrous sulfate. (Id. at 320-31.)

On April 21, Plaintiff complained to Ernesto Lam, M.D., of abdominal pain. The results of additional blood tests were similar to those previously obtained. Plaintiff was diagnosed with pancreatitis and prescribed Lisinopril, Colace, and Percocet. It was noted that Plaintiff's prescription for Percocet could be changed to Tramadol in the future. Plaintiff was referred to a nutritionist and was instructed to return in two months. (Id. at 171, 178.)

In July, Plaintiff underwent a consultative examination by Sarwath Bhattacharya, M.D. Plaintiff reported to Dr. Bhattacharya that he last worked two years prior and had stopped working because the company he had worked for went out of business. Dr. Bhattacharya noted that Plaintiff complained of abdominal pain, hypertension, and constipation. Plaintiff reported that he had been hospitalized in April 2008 for pain in his back, chest wall, and abdomen and that he was then advised that he had pancreatitis. He currently had a dull, achy pain in his abdomen almost every day and took Percocet for the pain. He denied having any ongoing back pain. Plaintiff also reported that his blood pressure is usually stable with medication; that he suffered from constipation for several years for which he was prescribed stool softeners; and that he currently experiences diarrhea, has two to four loose bowel movements every other day, and had lost five pounds since April

2009. Plaintiff's medications included Lisinopril, Colace, Senna, Percocet, Fleet enema, Ferrous sulfate, and multi-vitamin. Plaintiff reported that he can walk four to five blocks slowly, stand for one hour, lift about five pounds, and climb one flight of stairs very slowly. He has no problems with sitting. Physical examination showed Plaintiff to be in no acute distress. Mild tenderness was noted about the abdomen. No guarding or rigidity was noted. Plaintiff's gait was normal, and he could walk on his heels and toes as well as flex and touch his toes. He was able to squat and had a full range of motion in his shoulders, elbows, wrists, hips, and spine. Straight leg raises were negative. Dr. Bhattacharya's clinical impression was that Plaintiff had chronic pancreatitis with occasional acute flare-ups, mild anemia, stable hypertension, and constipation. He recommended that Plaintiff revise his stool softeners. (Id. at 180-86.)

Plaintiff underwent an upper GI endoscopy in August, the results of which were essentially normal with the exception of scant amounts of herniation in the stomach, likely secondary to gastritis. (Id. at 318.)

Plaintiff returned to BJH in January 2011 to establish care for complaints of ongoing pancreatic pain which was a five on a ten-point scale. (Id. at 296.) He reported having difficulty walking long distances, but denied having any other functional limitations, including with activities of daily living and memory. (Id. at 290-93.) Alexander Huang, M.D., noted that Plaintiff had been admitted in September 2010[4] for acute pancreatitis and was currently having persistent abdominal pain and pain in the back. Plaintiff reported the

---

[4]No records of this admission were before the ALJ.

pain to be eased with Tramadol and to be occasionally accompanied by vomiting and increased constipation. He also reported ringing in his ears bilaterally that had begun the previous year as well as occasional dizziness, problems with balance, and seeing spots. He had been generally fatigued over the past year. Dr. Huang noted that Plaintiff's past medical history included hypertension, chronic pancreatitis, and gastrointestinal bleed. His current medications included Lisinopril, Amlodipine, Triamterine, Senna, Docusate, Tramadol, and Omeprazole. Physical examination showed tenderness about the abdomen in the epigastric area and left upper quadrant, but was otherwise unremarkable. Laboratory testing was ordered, and Plaintiff was referred to an ear, nose, and throat specialist and to an ophthalmologist. (Id. at 294-95.)

In March, Plaintiff reported to Dr. Huang that his nausea and vomiting had worsened since the last visit. Physical examination showed tenderness about the epigastric area. Medication was prescribed for a bacteria, Helicobacter pylori (H. Pylori). If this did not resolve Plaintiff's abdominal pain, additional laboratory tests were to be ordered. (Id. at 276-77.) Plaintiff reported to the nurse that he had problems with falling and difficulty with walking and activities of daily living. (Id. at 274-75.)

Three days later, Plaintiff underwent an audiogram to investigate his complaints of experiencing tinnitus since the summer of 2010. (Id. at 267.)

Plaintiff returned to Dr. Huang in April with continued complaints of abdominal pain. Plaintiff reported the pain to be a seven. Examination showed continued abdominal tenderness. Plaintiff's pain medication was changed from Tramadol to Percocet, and a

computed tomography (CT) scan of his abdomen and pelvis was ordered. Dr. Huang noted that the results of the audiogram revealed that Plaintiff has asymmetric decreased hearing loss. (Id. at 249-51.)

In May, Dr. Huang noted that the results of the CT scan indicated recurrent pancreatitis. He ordered a follow up magnetic resonance imaging (MRI) and prescribed MS Contin for Plaintiff's continued severe pain. He also prescribed Sertraline/Zoloft for Plaintiff's major depressive disorder in response to his complaints of depressed mood, memory and concentration problems, and changes in sleep patterns. (Id. at 225-28.)

In June, Plaintiff reported to Dr. Huang that his epigastric pain was radiating to his back. Dr. Huang noted that the MRI had revealed acute and chronic pancreatitis with evidence of pseudocyst. Dr. Huang decided Plaintiff would start on steroid therapy in July and renewed his prescriptions, including Zoloft, MS Contin, and Percocet. (Id. at 217-19.)

Plaintiff again saw Dr. Huang in August, complaining of abdominal and low back pain at a level six. Dr. Huang noted that the steroid therapy had not had any effect. Plaintiff was continued on his medications. (Id. at 202-05.)

Ten months later, in June 2012, Plaintiff underwent a consultative examination by David Bradley, M.D., pursuant to his DIB application. Plaintiff complained of swelling of the pancreas, severe constipation, hypertension, and tinnitus. He reported having a history of chronic pancreatitis that has caused intermittent severe abdominal pain since 2008. His pain medication did little to ease the most severe pain. Also, he has had constipation since starting pain medications and back pain since 1996. The back pain sometimes occurred

simultaneously with his abdominal pain. When in severe pain, Plaintiff has difficulties performing activities of daily living. Physical examination showed generalized pain to palpation about the abdomen and palpable tenderness of the left lower lumbar spine. His range of motion was not significantly decreased, and he had a normal gait. At the end of the examination, Dr. Bradley opined that Plaintiff would have difficulty maintaining consistent work-related functions over a long period of time given approximately bi-weekly periods of severe pain which cause him difficulties performing most physical functions. (Id. at 335-41.)

In a Physical Medical Source Statement of Ability to Do Work-Related Activities completed that same date, Dr. Bradley opined that Plaintiff could frequently lift and carry up to one hundred pounds; sit up to seven hours in an eight-hour workday; stand and/or walk up to four hours in an eight-hour workday; frequently use his hands for gross and fine manipulation; and frequently engage in postural activities. Plaintiff's ability to engage in such activities depended, however, on the status of his pancreatitis. Dr. Bradley gave no opinion as to when Plaintiff first experienced the reported limitations. (Id. at 342-47.)

## The ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2008, and had not engaged in substantial gainful activity from his amended alleged disability onset date of January 15, 2004, through September 30, 2008. The ALJ next found that, through September 30, 2008, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Therefore, Plaintiff was not under a disability at any time from January 15, 2004, through

September 30. 2008. (Id. at 14-16.)

## Discussion

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

A claimant seeking DIB under Title II of the Social Security Act must establish a disability that existed prior to the expiration of his insured status. **Martonik v. Heckler**, 773 F.2d 236, 238 (8th Cir. 1985). A claimant can be found disabled only if he is unable to do "any substantial gainful activity by reason of any *medically determinable* physical or mental impairment[.]" 20 C.F.R. §§ 404.1505(a), 404.1527(a) (emphasis added). Such impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "*must* be established by *medical* evidence consisting of signs, symptoms, and laboratory findings[.]" 20 C.F.R. § 404.1508 (emphasis added). "When[, as in the instant case,] an individual is no longer insured for Title II disability purposes, [the Court] will only consider [his] medical condition as of the date [he] was last insured." **Davidson v. Astrue**, 501 F.3d 987, 989 (8th

Cir. 2007). Also, only evidence from acceptable medical sources can establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a). A claimant's statements of symptoms alone cannot constitute a basis upon which to find the existence of an impairment. See 20 C.F.R. §§ 404.1508, 404.1528(a). The claimant bears the burden of providing medical evidence to the Commissioner establishing the existence of a medically determinable impairment. 20 C.F.R. § 404.1512.

The predominant issue in this case is whether Plaintiff was disabled by a medically determinable impairment before his insured status expired on September 30, 2008. See **Martonik**, 773 F.2d at 238. Because the administrative record contains no medical evidence relating to the relevant period at issue, the ALJ did not err when she found that the record failed to establish that Plaintiff suffered from a medically determinable impairment prior to the expiration of his insured status. As explained below, Plaintiff's claim to the contrary fails.

The medical records in this case begin in January 2009 with blood tests that yielded some abnormal results. No medical evaluation or diagnostic interpretation accompanies these test results. Plaintiff was diagnosed with mild pancreatitis in April 2009 upon his presentation to BJH with complaints of a recent, acute onset of abdominal pain occurring in March 2009. Although Plaintiff reported at that time that he had experienced similar symptoms eleven years prior, there is no clinical or diagnostic support in the record substantiating this claim. Plaintiff's mere report that he experienced symptoms at an earlier date is an insufficient basis to find the existence of an impairment on or since such date. See

20 C.F.R. §§ 404.1508, 404.1528(a).

Plaintiff also made subjective statements during consultative examinations in July 2009 and June 2012 that he was diagnosed with and experienced symptoms of pancreatitis in April 2008. Plaintiff made these same statements at the administrative hearing in March 2012. No medical evidence supports Plaintiff's self-report of suffering signs or symptoms of this impairment in 2008. Nor are there any recorded signs or laboratory findings establishing the existence of pancreatitis or any other impairment prior to 2009.[5] Because "symptoms, such as pain, . . . will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present," 20 C.F.R. § 404.1529(b), Plaintiff's report of experiencing symptoms in 2008, with nothing more, fails to establish that a medically determinable impairment existed at that time.[6] Since no medical evidence shows the existence of an impairment prior to 2009, Plaintiff cannot establish a basis for disability prior to the expiration of his insured status on September 30, 2008. 20 C.F.R. §§ 404.1508, 404.1528(a).

Insofar as Plaintiff suggests that his diagnosis of *chronic* pancreatitis demonstrates the

---

[5] The ALJ found, and the record shows, that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured." (R. at 16.) Plaintiff challenges the ALJ's decision as it relates to his symptoms of pain and constipation/diarrhea associated with pancreatitis. Plaintiff makes no challenge with respect to his claimed conditions of hypertension or tinnitus.

[6] Indeed, the Court notes that Plaintiff's contemporaneous statements made to hospital personnel in April 2009 in relation to his seeking treatment – that his pain began in March 2009 and that he experienced one similar episode eleven years prior – are contrary to his later statements made for evaluation of disability that his debilitating symptoms began in 2008.

existence of this impairment during the relevant period, the Court notes that diagnostic and laboratory tests first supported this diagnosis in 2011 upon Dr. Huang's review of Plaintiff's current signs, a recent CT scan and MRI, and evidence from a September 2010 hospitalization. Although retrospective medical conclusions or diagnoses may establish the existence of a medically determinable impairment prior to the expiration of a claimant's insured status where contemporaneous objective medical evidence is lacking, cf. **Grebenick v. Chater**, 121 F.3d 1193, 1199 (8th Cir. 1997), such conclusions and diagnoses must nevertheless continue to be supported by medically acceptable clinical or diagnostic data, see **id.**. While Dr. Huang diagnosed Plaintiff in 2011 with chronic pancreatitis, there is no evidence that this was a retrospective diagnosis or that he considered the condition to be present prior to September 30, 2008. Nevertheless, as discussed above, there is no medically acceptable clinical, diagnostic, or other data to support a finding that Plaintiff experienced the condition prior to the expiration of his insured status. While the record indicates that Plaintiff's health worsened in the subsequent years, the record fails to show disability during the relevant time period. See **Turpin v. Colvin**, 750 F.3d 989, 994-95 (8th Cir. 2014).

Finally, to the extent Plaintiff claims that the ALJ should have elicited a medical advisor's opinion as to the onset date of his disability, the Court notes that such an opinion is required only if the existing medical evidence is ambiguous as to whether a disability may have begun prior to the expiration of Plaintiff's insured status. See **Grebenick**, 121 F.3d at 1200-01. There is no ambiguity in this case. As discussed above, there is no medical evidence of record demonstrating that Plaintiff suffered from a medically determinable

impairment on or prior to September 30, 2008. As such, no question is raised as to whether any medically determinable impairment could be considered disabling on or before the expiration of Plaintiff's insured status. The ALJ did not err in failing to seek the opinion of a medical advisor. See **Id.** at 1201.

**Conclusion**

The record as a whole suggests that Plaintiff's condition may have deteriorated in the years following the expiration of his insured status. The issue of Plaintiff's disability, however, must be evaluated based on his condition as of September 30, 2008, his date last insured. In considering the evidence relevant to that period, this Court's role is to determine whether the quantity and quality of evidence is sufficient for a reasonable mind to find it adequate to support the ALJ's conclusion. Because a reasonable mind can find the evidence sufficient, the ALJ's decision must be affirmed. See **Davis v. Apfel**, 239 F.3d 962, 966 (8th Cir. 2001).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**. An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of January, 2015.